## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| **JASON SMITH** | * | |
| **PLAINTIFF** | | **CIVIL ACTION** |
| | * | |
| **v.** | | |
| | * | **FILE NO:** |
| **HEALTHCARE FUNDING** | | **Jury Trial Demanded** |
| **SOLUTIONS, LLC,** | * | |
| **DEFENDANT** | | |

## COMPLAINT

COMES NOW Jason Smith, hereinafter designated and referred to as "Plaintiff",

and brings this his action for violation of the Fair Credit Reporting Act ("FCRA"),

violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Georgia

Fair Business Practices Act ("GFBPA"), and declaratory relief as against Healthcare

Funding Solutions, LLC, hereinafter designated and referred to as "Defendant

Healthcare",  and for cause respectfully shows as follows:

### PARTIES

1.

Plaintiff is a resident of Muscogee County, Georgia, in the Middle District of

Georgia, and a victim of repeated false credit reporting and violations of the FCRA by

Defendant, together with violations of the FDCPA and the GFBPA.

2.

Defendant Healthcare herein is a foreign corporation collecting debts in the State

of Georgia and in the Middle District of Georgia through agents.

## JURISDICTION AND VENUE

### 3.

Jurisdiction of this Court arises under 15 U.S.C. §§ 1681p, 15 U.S.C. §§ 1692k(d), and 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. § 2201. The United States District Court also has supplemental jurisdiction with regard to Plaintiff's state law claims and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

### 4.

Venue is proper, because many of the relevant events and/or activities damaged a consumer living within Muscogee County, Middle District of Georgia.

### 5.

This is an action brought by a consumer for violations of the FCRA, 15 U.S.C. §§ 1681-1681u, and the FDCPA, 15 U.S.C. §§ 1692 - 1692o, in connection with a defaulted debt, that does not belong to Plaintiff. Plaintiff seeks actual damages, statutory and punitive damages, and to the extent possible, injunctive and declaratory relief.

### 6.

The Plaintiff is a natural person residing in Muscogee County, Georgia.

### 7.

Defendant Healthcare was, at all times relevant to this complaint, a company that was engaged in the business of collecting debts alleged to be due another in the State of Georgia (Lifestar Response Corp.) which were purchased and collected from a location in another state. Upon knowledge and belief, Defendant is a corporate citizen of the State

of Colorado.  Service of process may be accomplished through service upon the

registered agent at1675 Broadway, Suite 1200, Denver, Colorado  80202.

## REQUEST FOR TRIAL BY JURY

### 8.

Plaintiff requests a trial by jury.

## REQUEST FOR EXEMPLARY/PUNITIVE DAMAGES

### 9.

Plaintiff respectfully requests that this Honorable Court instruct the jury, as the

trier of facts, that in addition to actual or compensatory damages, punitive or exemplary

damages may be awarded against the Defendant under the provisions of the FCRA and/or

state laws, including Georgia.

## REQUEST FOR COSTS OF LITIGATION AND ATTORNEY'S FEES

### 10.

Plaintiff respectfully requests that this Honorable Court award Plaintiff his

litigation expenses and other costs of litigation and reasonable attorney's fees incurred in

this litigation in accordance with the provisions of the FCRA, the FDCPA, and/or other

laws.

## GENERAL FACTUAL BASIS

### 11.

Plaintiff learned that his credit reports issued by the various consumer reporting agencies contained inaccurate information as a result of information furnished by Lifestar Response Corp.'s then collection agency, United Resource Systems.

### 12.

Upon learning of errors, when American Express set a low credit limit on Plaintiff's card, Plaintiff lodged disputes with United Resource Systems who corrected the reporting and returned the account to Lifestar Response Corp. as disputed because of the error.

### 13.

Lifestar then, in bad faith, sold the disputed account to Defendant Healthcare, a third party debt buyer/collector who then assigned it to Firstsource Financial Solutions, LLC., a third party debt collector.

### 14.

Defendant Healthcare, as a tool to assist it in the collection of the debt that Plaintiff did not owe, did then report the false and inaccurate information to consumer reporting agencies yet again.

### 15.

As a direct and proximate result of Defendant Healthcare's reporting, Plaintiff, a college senior, was unable to renew his Sallie Mae student loan in time to complete a semester to graduate and eventually was required to clear room on a high interest credit card he possessed in order to graduate at a later date.

16.

In temporal proximity to Plaintiff's credit access woes instigated by Defendant Healthcare, Plaintiff received a dunning letter from Firstsource Financial Solutions, LLC.

17.

Plaintiff immediately disputed the alleged debt and demanded that Firstsource Financial Solutions, LLC. provide verification and that Defendant Healthcare be told to cease reporting the false and inaccurate derogatory information as Plaintiff was being damaged on a continuing basis.

18.

Plaintiff then disputed the false and inaccurate amount inaccurate account, reported by Defendant Healthcare to Equifax Credit Information Services, Inc., Transunion and Experian Information Solutions, Inc.  Plaintiff's disputes to the credit reporting agencies took place in the summer of 2010, and Plaintiff then noticed Defendant Healthcare and Firstsource Financial Solutions, LLC. regarding the dispute and his intentions to seek legal redress if no relief was had.  Defendant attributed to Plaintiff a derogatory account and rating which did not belong to Plaintiff and which should not have been attributed to Plaintiff.

19.

In response to Plaintiff's disputes, the consumer reporting agencies, Equifax Information Services, Inc., Transunion  and Experian Information Solutions, Inc. each, pursuant to 15 U.S.C. § 1681i(a), forwarded to Defendant Healthcare notification of Plaintiff's disputes and requested that Defendant conduct a reinvestigation, per 15 U.S.C. § 1681s-2.

20.

Defendant Healthcare either failed to conduct such investigation, failed to conduct it reasonably in the premises or refused to conduct such investigation of the disputed information and, instead, updated Plaintiff's consumer reports to report false, inaccurate information and attributed same to Plaintiff as verified and reported in December, 2010. Defendant reported such information monthly on a regular cycle in accordance with its subscribership with the consumer reporting agencies.

21.

Plaintiff had received purported evidence from Firstsource Financial Solutions, LLC. generated by Lifestar Response Corp. that establishes clearly and conspicuously its altered nature, and to continue reporting derogatory data in the face of that evidence clearly establishes Defendant Healthcare's deliberate ignorance of its obligation to Plaintiff to conduct a reasonable investigation.

22.

Defendant Healthcare has failed and refused to review all relevant information provided by and available through the consumer reporting agencies.

23.

Plaintiff then hired counsel, who once again requested reinvestigation of the false and inaccurate data by the consumer reporting agencies with a copy to Defendant was further and once again provided information that the account did not belong to Plaintiff. Defendant Healthcare nevertheless continued to report such inaccurate and false information regarding the Plaintiff and continued to verify to the consumer reporting

agencies that such data was accurate in response to notices from the consumer reporting agencies.

24.

Defendant Healthcare was required to conduct a reasonable, timely, and more thorough reinvestigation of Plaintiff's disputes and respond to the consumer reporting agencies to which it subscribed with willful, complete, and relevant information.

25.

Defendant Healthcare violated the mandates of 15 § U.S.C. 1681s-2(b), and Plaintiff has suffered damages as a result of those violations.

26.

Defendant Healthcare willfully violated the mandates of 15 U.S.C. § 1681s-2(b).

27.

Alternatively, Defendant Healthcare negligently violated the mandates of 15 U.S.C. § 1681s-2(b).

28.

Defendant Healthcare likewise violated the mandates of 15 U.S.C. § 1681s-2(a) and such violations form the basis of a negligence per se claim and an intentional tort, per se.

29.

Defendant Healthcare knew or should have known or consciously avoided knowing that the information it had repeatedly reported about Plaintiff was false and improperly attributed to Plaintiff.  Defendant was further notified by Plaintiff of the

errors and his disputes, yet Defendant failed to report such information as disputed to the consumer reporting agencies.

30.

Said information was negative and damaging to Plaintiff.  Plaintiff sustained credit denials repeatedly.  The publication of false consumer reports is evidenced in the inquiry section of the respective credit reports issued about Plaintiff.

31.

Defendant Healthcare is a "user" of credit information and "furnisher" of credit information as discussed in the FCRA.

32.

Defendant Healthcare is a "debt collector" as discussed in the FDCPA.

33.

Defendant Healthcare recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters reported.

34.

Defendant Healthcare's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, emotional distress, and mental anguish.

35.

Defendant Healthcare was notified of its false reporting, however, Defendant continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate, and false information about the Plaintiff.

36.

Defendant Healthcare also breached its various and multiple agreements and contracts with the consumer reporting agencies [and/or their affiliates] [collectively "consumer reporting agencies"], to whom it subscribed, by continuously reporting false credit information about Plaintiff.

37.

Defendant Healthcare was aware that it's reporting and activities would [and will] damage Plaintiff and his ability to enjoy life and utilize the credit rating and reputation property rights he secured by honoring his obligations to his creditors.

38.

The consumer reporting agencies maintain subscriber contracts and relationships with Defendant separately and individually, under which Defendant is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

39.

Under the subscriber contracts Defendant owes a number of duties, including the duty to report truthful and accurate information about its customers and other consumers, including Plaintiff.

40.

Defendant Healthcare owed duties of reasonable care to Plaintiff.

41.

Defendant Healthcare failed to exercise reasonable care and prudence in each reporting and re-reporting, the handling and reinvestigation of data about Plaintiff, all made the subject of this lawsuit, and consequently caused damage to Plaintiff.

42.

Defendant Healthcare negligently impaired Plaintiff's credit rating and property rights in his credit reputation.

43.

Alternatively, Defendant Healthcare has, with willful intent to injure or maliciously, damaged Plaintiff's property rights in his credit reports and reputation and standing in the community.

44.

Defendant Healthcare recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters asserted.

45.

Defendant Healthcare's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, emotional distress, and mental anguish to Plaintiff.

46.

Defendant Healthcare was notified of inaccuracies by Plaintiff, however, the Defendant continued to issue and/or publish report(s) to third parties which contained inaccurate information about Plaintiff.

47.

Defendant Healthcare has defamed Plaintiff.

48.

Alternatively, Defendant Healthcare has, with willful intent to injure and/or maliciously, defamed Plaintiff.

49.

Defendant Healthcare has invaded Plaintiff's privacy.

50.

Alternatively, Defendant Healthcare has, with willful intent to injure and/or maliciously, invaded Plaintiff's privacy.

51.

Defendant Healthcare has intentionally inflicted humiliation and emotional distress and mental anguish on Plaintiff.

52.

Alternatively, Defendant Healthcare has, with willful intent to injure or maliciously, published such false and inaccurate information and severely damaged the personal and consumer reputation of Plaintiff and caused him to suffer severe humiliation, emotional distress and mental anguish.

53.

Defendant Healthcare has engaged in unfair and deceptive trade and business practices and is liable unto Plaintiff under state laws for those violations.

54.

Alternatively, Defendant Healthcare has, with willful intent to injure or maliciously, engaged in unfair and deceptive trade and business practices and is liable unto Plaintiff under various state laws for those violations.

55.

All of Defendant Healthcare's actions with regard to the infliction of humiliation, distress, mental anguish, anxiety, frustration, vexation, and other general damages were either intentional or in conscious disregard for the rights and sensibilities of Plaintiff.

56.

Misrepresenting consumers' financial indebtedness to others for falsely reporting credit histories are unfair and deceptive acts or practices that clearly fall within the parameters of the GFBPA, O.C.G.A. § 10-1-391, et. seq.

57.

Collection activities that are abusive and violative of the FDCPA are violative of the GFBPA as well.

58.

Defendant is therefore liable over to Plaintiff for all actual damages, additional treble damages, punitive damages, attorney's fees, and expenses of litigation pursuant to O.C.G.A. § 10-1-399a,b and c.

59.

Plaintiff has provided Defendant Healthcare with the required thirty (30) day ante litem notice with offer to cure, but Defendant Healthcare has failed to respond or affect cure.

60.

Defendant Healthcare is liable unto Plaintiff for all actual, statutory, exemplary, and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time attempted to repair his credit, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

## PRAYERS

Wherefore, Plaintiff respectfully prays as follows:

(a) that Summons issue and Defendant be served as by law provided;

(b) that Plaintiff be awarded judgment for all reasonable damages allowed by law and all reasonable damages sustained by Plaintiff including, but not limited to, all actual, statutory, exemplary, and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time attempted to repair his credit, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid;

(c) that Plaintiff be awarded statutory damages for violation of the FDCPA and FCRA;

(d) that Plaintiff be awarded actual damages together with treble damages for violation of the GFBPA including punitive damages, attorney's fees, and expenses of litigation;

(e) that all issues triable by jury be tried by a jury;

(f) that all costs of this action be taxed to Defendant; and

(g) for such other and further relief as unto this Court may seem just and equitable in the premises.

This 9th day of June 2011.

/S/John W. Roper
John W. Roper

Prepared by:

John W. Roper
Georgia Bar No: 614159
Attorney for Plaintiff
5353 Veterans Parkway, Suite A
Columbus, Georgia 31904
T: (706) 596-5353
F: (706) 596-5383
johnroper@roperlaw.com